IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Bob Wood and Gail Wood, | Case No. 8:25-cv-03367-JDA |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| D.R. Horton, Inc., | |
| Defendant. | |
| D.R. Horton, Inc., | |
| Third Party Plaintiff, | |
| v. | |
| Knight Construction and Landscaping, LLC; Theron H. Knight, III, *d/b/a* Knight Construction and Landscaping LLC, | |
| Third Party Defendants. | |

This matter is before the Court on Defendant's motion to compel arbitration. [Doc. 12.] For the reasons stated herein, the Court grants the motion.

## BACKGROUND

**The Homeowner Agreement and the Independent Contractor Agreement**

On or around January 20, 2024, Plaintiffs Bob and Gail Wood ("Plaintiffs") entered into a contract (the "Homeowner Agreement") with Defendant D.R. Horton ("Defendant") for the construction and purchase of a home in Greenwood, South Carolina (the "Home"). [Doc. 12-2.] The Homeowner Agreement contains separately located and separately

initialed warranty and arbitration provisions.  [*Id*. at 8–9 ¶¶ 14–15; *see also* Doc. 12-1 at 18.]

The Homeowner Agreement's warranty provision provides:

> **14. WARRANTIES AND DISCLAIMER.**
>
> **a.     Ten-Year Limited Warranty.**  Seller shall provide Buyer with a written, ten-year limited warranty on the House administered by Residential Warranty Corporation ("RWC") which shall be effective as of the Closing Date.  The terms and conditions of, and exclusions from, the ten-year limited warranty shall be as set forth in that document published by RWC entitled, "LIMITED WARRANTY, 10 YEAR LIMITED WARRANTY FOR NEW HOMES," and referred to herein as the "Limited Warranty."  At closing, Seller shall deliver to Buyer the actual Limited Warranty for the House, to be validated by RWC after Closing.
>
> **b.     Manufacturers' Warranties.**  At Closing, Seller shall assign to Purchaser all warranties, expressed or implied, which are given by the manufacturer of any appliance or product installed in the House.
>
> **c.     Disclaimer and Limitation of Seller's Liability.**  THE LIMITED WARRANTY GIVEN TO PURCHASER BY SELLER PURSUANT TO SUBSECTION 14a ABOVE IS TO THE EXCLUSION OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, AND SELLER HEREBY DISCLAIMS ANY AND ALL SUCH OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF HABITABILITY, MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.   IN  ADDITION,  SELLER  MAKES  NO REPRESENTATION OR WARRANTY WHATSOEVER REGARDING THE PAST, PRESENT OR FUTURE CONDITION OR USE OF ANY LANDS OR AREAS SURROUNDING THE PROPERTY OR IN THE VICINITY OF THE PROPERTY.  AFTER CLOSING, SELLER SHALL HAVE NO LIABILITY OR OBLIGATION TO PURCHASER OF ANY NATURE WHATSOEVER EXCEPT AS PROVIDED IN THIS SECTION 14 OF THIS AGREEMENT, IN SECTION 9(d) ABOVE AND IN SELLER'S DEED TO PURCHASER. EXCEPT AS OTHERWISE PROVIDED IN THE LIMITED WARRANTY, SELLER SHALL NOT BE LIABLE FOR ANY

> REASON, UNDER ANY CIRCUMSTANCES, TO PURCHASER OR ANYONE CLAIMING THROUGH PURCHASER FOR MONETARY DAMAGES OF ANY KIND, INCLUDING SECONDARY, CONSEQUENTIAL, PUNITIVE, GENERAL, SPECIAL, OR INDIRECT DAMAGES.

[Doc. 12-2 at 8–9 ¶ 14.]

The Homeowner Agreement's arbitration provision provides:

> **15. MANDATORY BINDING ARBITRATION**. PURCHASER AND SELLER SHALL SUBMIT TO BINDING ARBITRATION ANY AND ALL DISPUTES WHICH MAY ARISE BETWEEN THEM REGARDING THIS AGREEMENT AND/OR THE PROPERTY, INCLUDING BUT NOT LIMITED TO ANY DISPUTES REGARDING: (A) SELLER'S CONSTRUCTION AND DELIVERY OF THE HOME; (B) SELLER'S PERFORMANCE UNDER ANY PUNCH LIST OR INSPECTION AGREEMENT; AND (C) THE LIMITED WARRANTY PURSUANT TO SECTION 14 ABOVE. THE ARBITRATION SHALL TAKE PLACE IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED. THE PROCEEDING SHALL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AND TO THE EXTENT POSSIBLE, UNDER RULES WHICH PROVIDE FOR AN EXPEDITED HEARING. THE FILING FEE FOR THE ARBITRATION SHALL BE PAID BY THE PARTY FILING THE ARBITRATION DEMAND, BUT THE ARBITRATOR SHALL HAVE THE RIGHT TO ASSESS OR ALLOCATE THE FILING FEES AND ANY OTHER COSTS OF THE ARBITRATION AS A PART OF THE ARBITRATOR'S FINAL ORDER. THE ARBITRATION SHALL BE BINDING AND FINAL, AND EITHER PARTY SHALL HAVE THE RIGHT TO SEEK JUDICIAL ENFORCEMENT OF THE ARBITRATION AWARD. NOTWITHSTANDING ANY OTHER PROVISION HEREIN, ANY DISPUTES ARISING UNDER THE LIMITED WARRANTY SHALL BE MEDIATED, ARBITRATED AND/OR JUDICIALLY RESOLVED PURSUANT TO THE TERMS, CONDITIONS, PROCEDURES AND RULES OF THAT WARRANTY PROGRAM. NOTWITHSTANDING THE FOREGOING, SELLER SHALL HAVE THE RIGHT TO INTERPLEAD ALL OR ANY PART OF THE EARNEST MONEY INTO A COURT OF COMPETENT JURISDICTION AS PROVIDED FOR IN SECTION 4 HEREIN. NOTWITHSTANDING THE FOREGOING, THE ARBITRATION PROVISIONS OF THIS

>    SUBSECTION (B) SHALL NOT APPLY IN THE EVENT THAT
>    THE DISPUTE RELATES TO A DEFAULT BY THE SELLER
>    UNDER SECTION 16(F) OF THIS AGREEMENT.

[*Id.* at 9 ¶ 15.]

On June 15, 2016, Defendant entered into an independent contractor agreement (the "Subcontractor ICA") with Theron H. Knight, III, doing business as Knight Construction and Landscaping, LLC (the "Subcontractor"), "to provide certain labor and/or supply certain materials . . . concerning the Home, including but not limited[ ]to the installation of the garage slab and driveway."[1]  [Doc. 12 at 2; *see* Doc. 12-3.]  The Subcontractor ICA contains the following provisions governing dispute resolution and arbitration:

>    **13.1 Disputes.**  All disputes, whether existing now or arising in the future between them, related in any way to this Agreement, to [Subcontractor's] Work, or to any dispute that [Defendant] and [Subcontractor] shall have with any third party related to the Work ("Disputes") shall be subject to Alternative Dispute Resolution.  These disputes shall include claims related to the construction or sale of any home or property incorporating the Work, including any claims asserting any alleged defects in the Work or any alleged representations and/or warranties, express or implied, relating to the property and/or the improvements.
>
>    . . .
>
>    **13.3 Arbitration**.  If the parties are unable to resolve any Dispute by agreement, regardless of any other choice of law provision in any underlying contract or Agreement, the Dispute shall be submitted to binding arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA").  All demands for arbitration shall be made before the expiration of the applicable statutes of limitations or repose, except that any claim by [Defendant] shall not accrue for purposes of any

---

[1] The Subcontractor ICA "[was] entered on a blanket basis."  [Doc. 12-3 at 2 ¶ 1.]  That is, "[t]he terms of [the Subcontractor ICA] . . . govern all current and future work of [Subcontractor] for [Defendant]," not just work performed on Plaintiffs' Home.  [*Id.*]

4

> time limitation for claims until [Defendant] has discovered the claim, or could have discovered it by reasonable diligence. The award rendered by the arbitrator(s) shall be final and binding. A petition to confirm, vacate, modify or correct an award may be filed in any court of competent jurisdiction, but the award may be vacated, modified or corrected only as permitted by the FAA.

[Doc. 12-3 at 7 ¶¶ 13.1, 13.3.]

**The Complaints**

On March 31, 2024, at approximately 7:30 p.m., Gail Wood allegedly lost her balance "on an excessive rise between the carport and driveway" of the Home. [Doc. 1-3 at 3.] She fell to the ground, resulting in fractures to her right arm and right ankle. [*Id.*]

On March 19, 2025, Plaintiffs filed suit against Defendant, alleging Defendant created a dangerous condition and caused Gail Wood's injuries. Specifically, Plaintiffs allege that Defendant acted in a negligent, grossly negligent, and reckless manner by:

- a. Allowing an unsafe condition to occur and remain in an area where it expected Plaintiff [would] traverse on a regular basis;

- b. Allowing the condition to be defective, dangerous[,] and unsafe for the Plaintiff;

- c. Failing to correct the unsafe and dangerous condition;

- d. Failing to adequately inspect the subject area;

- e. Failing to report the unsafe and dangerous condition in order to have the subject defective condition corrected;

- f. Failing to provide an adequate sign, notice[,] or warning of the defective condition until repair could be made;

- g. Failing to follow guidelines, protocols, policies, manuals[,] and building codes pertaining to construction of transitions between driveways and garage floors; and

5

   h. . . . [F]ailing to [otherwise] use due care in keeping the subject area in a reasonable and safe condition.

[Doc. 1-3 at 4.]

  Subsequently, Defendant filed an Amended Third-Party Complaint against Subcontractor, alleging "the Work provided by Subcontractor was grossly negligent, such that if proven to be true, Subcontractor . . . failed to meet the requirement of the Subcontractor ICA, including failing to construct the Home in accordance with contract requirements, industry standards, and/or building code requirements so as to avoid construction defects." [Doc. 27 at 10.] In addition, Defendant alleges that "[t]he Subcontractor ICA contained an indemnification clause, wherein the Subcontractor agreed to indemnify [Defendant] for claims, demands, and lawsuits arising out of, resulting from, or related in any way to the Work provided by Subcontractor." [*Id.*]

**The Motion to Stay and Compel Arbitration**

  On April 29, 2025, Defendant filed a motion to stay the case and compel arbitration.[2] [Doc. 12.] In essence, Defendant argues that the Homeowner Agreement and the Subcontractor ICA subject all claims and counterclaims in this case to mandatory arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA") and/or the South Carolina Uniform Arbitration Act, S.C. Code § 15-48-10, et seq. (the "SCUAA"). [*Id.*] Accordingly, Defendant asks the Court to stay this case pending resolution of all claims in arbitration. [*Id.* at 3.] Regarding the Homeowner Agreement, Defendant argues (1) the contract is governed by the FAA; (2) the arbitration provision did not merge out of

---

[2] On June 12, 2025, the Court granted Defendant's separate motion to stay all scheduling order deadlines pending the Court's ruling on the motion to stay and compel arbitration. [Doc. 24; *see also* Docs. 13; 18.]

6

existence once the deed to the Home was executed; and (3) no general contract defenses—such as unconscionability—invalidate the arbitration provision. [Doc. 12-1 at 5–24.]

Plaintiffs filed a response in opposition to Defendant's motion on June 2, 2025. [Doc. 18.] Specifically, Plaintiffs claim that the Homeowner Agreement's arbitration provision—read in conjunction with the neighboring warranty provision—is unconscionable. [*Id.* at 5–8.] In addition, Plaintiffs argue that the arbitration provision was merged out of existence upon execution of the deed to the Home. [*Id.* at 8–11.] Finally, Plaintiffs contend that personal-injury claims do not fall within the scope of the arbitration provision. [*Id.* at 11–13.]

Defendant filed a reply and a supplemental response on June 9, 2025, and October 14, 2025, respectively. [Docs. 20; 33.]

On January 30, 2026, the Subcontractor filed a response to Defendants' motion. [Doc. 37.] The Subcontractor "consents to arbitration . . . to the extent that such arbitration is required by the [Subcontractor ICA]" and "takes no position as to the terms and conditions of the [Homeowner Agreement] . . . ." [*Id.* at 1.] Accordingly, the Court grants as unopposed Defendant's motion to compel arbitration under the Subcontractor ICA.

## **APPLICABLE LAW**

The FAA establishes a "strong federal public policy in favor of enforcing arbitration agreements" and is designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 219 (1985). The FAA was enacted "in 1925 in order to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been

7

adopted by American courts, and to place arbitration agreements on the same footing as other contracts." *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 639 (4th Cir. 2002) (internal quotation marks omitted). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002).

The FAA provides that arbitration clauses in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a district court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate their dispute. *Id*. §§ 2, 3. However, if the "making of the arbitration agreement or the failure, neglect, or refusal to perform the same" is at issue, a district court must first decide whether the arbitration clause is enforceable against the parties. *Id*. § 4. "'[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001) (internal quotation marks omitted).

A party seeking to compel arbitration under the FAA must establish the following four elements: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute.[3] *Am. Gen. Life &*

---

[3] In deciding whether the parties have formed an agreement to arbitrate, the court must conduct a trial "when a party unequivocally denies that any arbitration agreement exists, and shows sufficient facts in support thereof." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (cleaned up). "To decide whether sufficient facts

8

*Accident Ins. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005). "[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501 (internal quotation marks omitted).

"Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Id.* "Defendant, as the party seeking to enforce the Agreement, bears the initial burden of persuading this court that the parties entered into an enforceable arbitration agreement." *Gordon v. TBC Retail Grp., Inc.*, No. 2:14-cv-03365-DCN, 2016 WL 4247738, at *5 (D.S.C. Aug. 11, 2016) (internal quotation marks omitted). "If defendant makes such a showing, then the burden shifts to the [plaintiff] to show that even though there was some written contract, [the plaintiff] did not actually agree to it-because [his] signature was forged, the terms of the contract were misrepresented, or some other reason evincing lack of true agreement." *Id.* (alterations in original) (internal quotation marks omitted). Where a valid arbitration agreement exists and covers the claims at issue, this Court has "no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500.

---

support a party's denial of an agreement to arbitrate, the district court is obliged to employ a standard such as the summary judgment test" and "is entitled to consider materials other than the complaint and its supporting documents." *Id.* "If the record reveals a genuine dispute of material fact regarding the existence of an agreement to arbitrate, the court shall proceed summarily and conduct a trial on the motion to compel arbitration." *Id.* (cleaned up). In this context, "[a] factual dispute is material if the resolution thereof might affect the outcome of the motion under the governing law." *Id.* (cleaned up).

**DISCUSSION**

**Whether the Homeowner Agreement Requires Arbitration Under the FAA**

*Dispute Between the Parties*

First, there is clearly a dispute between the parties. Plaintiffs entered into the Homeowner Agreement with Defendant on January 20, 2024. [Doc. 12-2.] Plaintiffs now, in connection with the construction of the Home, allege Defendant's negligence, gross negligence, and recklessness caused Gail Wood's personal injuries. [*See generally* Doc. 1-3.]

*Written Arbitration Agreement Purporting to Cover the Dispute*

Plaintiffs argue the arbitration provision in question does not encompass their personal-injury claims. [Doc. 18 at 11–13.] The undersigned disagrees.

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). Accordingly, courts are to construe the language of an arbitration provision broadly. *See, e.g., J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 321 (4th Cir. 1988) (determining that an arbitration provision purporting to cover disputes "'arising in connection with the present contract' . . . d[id] not limit arbitration to the literal interpretation or performance of the contract[, but] embrace[d] every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute"); *Wachovia Bank, N.A. v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006) ("We have consistently held that an arbitration clause encompassing all disputes 'arising out of or relating to' a contract embraces every dispute between the parties having a significant relationship to the contract regardless of

10

the label attached to a dispute." (internal quotation marks omitted)); *Landers v. Fed. Deposit Ins. Corp.,* 739 S.E.2d 209, 213 (S.C. 2013) ("A clause which provides for arbitration of all disputes 'arising out of or relating to' the contract is construed broadly.").

In the present case, the Homeowner Agreement's arbitration provision purports to cover "any and all disputes which may arise. . . *regarding this agreement and/or the property*." [Doc. 12-2 at 9 ¶ 15 (emphasis added)]; *see also* Merriam-Webster, https://www.merriam-webster.com/dictionary/regarding (last accessed Feb. 2, 2026) (defining "regarding" as "with respect to" or "concerning"); Merriam-Webster, https://www.merriam-webster.com/dictionary/concerning (last accessed Feb. 2, 2026) (defining "concerning" as "*relating to*" or "regarding" (emphasis added)). Construing "regarding" broadly, the undersigned presumes Plaintiffs' personal-injury claims bear a sufficiently significant relationship to the Homeowner Agreement and/or the Home itself, as such claims stem from alleged construction defects on the property. [*See* Doc. 1-3 (Complaint)]; *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 47 (2d Cir. 2000) (determining that homeowners' claims against a termite extermination company for "compensation for property damage and personal injury under various tort theories" were subject to the treatment contract's broad arbitration clause, where the claims stemmed from an oil-discharge accident occurring as a result of the treatment). Accordingly, the Court concludes that the Homeowner Agreement's arbitration provision purports to cover the dispute within the meaning of the FAA.

### Relationship of the Transaction to Interstate Commerce

"The United States Supreme Court has held that the phrase 'involving commerce' is the same as 'affecting commerce,' which has been broadly interpreted to mean that

11

Congress intended to utilize its powers to regulate interstate commerce to its full extent." *Blanton v. Stathos*, 570 S.E.2d 565, 568 (S.C. Ct. App. 2002) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995)). "To ascertain whether a transaction involves commerce within the meaning of the FAA, the court must examine the agreement, the complaint, and the surrounding facts." *Zabinski v. Bright Acres Assocs.*, 553 S.E.2d 110, 117 (S.C. 2011).

In South Carolina, transactions for the construction of new homes "manifestly involve interstate commerce." *Damico v. Lennar Carolinas*, 879 S.E.2d 746, 753 (S.C. 2022); *see also Episcopal Hous. Corp. v. Federal Ins.*, 239 S.E.2d 647, 652 (S.C. 1977) (noting that new construction implicates interstate commerce because "[i]t would be virtually impossible to construct" a building "with materials, equipment and supplies all produced and manufactured solely within the State of South Carolina").

In the present case, the transaction at issue involved the *construction* and sale of a new home, not the sale of a pre-existing home. [*See* Doc. 12-2 at 18–19 ("STAGES OF CONTRUCTION"); 21 ("COMPLETED CONSTRUCTION").] As such, the transaction implicates interstate commerce due to materials and work sourced from out-of-state entities. *See Episcopal Hous. Corp.*, 239 S.E.2d at 652.

### Opposing Party's Refusal to Arbitrate

Plaintiffs not only contest whether the FAA applies generally; they also contest whether the Court may enforce the arbitration provision at all. [*See generally* Doc. 18.] As such, the fourth factor of the FAA is met.

Because the four provisions of the FAA apply, the Court need not address whether the SCUAA applies. *See Damico*, 879 S.E.2d at 753 ("Because federal law preempts

state law in this instance, we need not decide whether [the defendant] could also compel arbitration under the SCUAA."). Thus, the Court now turns to whether any contract defenses render the arbitration provision unenforceable.

**Whether the Arbitration Provision is Unconscionable**

Plaintiffs argue that this Court should not enforce the arbitration provision because it is unconscionable. [Doc. 18 at 6–8.] To this end, Plaintiffs argue that the arbitration provision fully incorporates the warranty provision. [*Id.*] The Court disagrees.

"[E]xcept where the parties otherwise intend[, ]arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded," and where no challenge is made to the enforceability of the arbitration clause itself, "a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself" is unenforceable. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402 (1967). In South Carolina, "'[a] severable contract is one in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor is it intended by the parties that they shall be. The entirety or severability of a contract depends primarily upon the intent of the parties rather than upon the divisibility of the subject, although the latter aids in determining the intention.'" *Columbia Architectural Grp., Inc. v. Barker*, 266 S.E.2d 428, 429 (S.C. 1980) (quoting *Packard & Field v. Byrd*, 51 S.E. 678, 679 (S.C. 1905)).

The arbitration provision in the Homeowner Agreement is severable from the warranties provision, and the Court need not read the two provisions in conjunction. Indeed, the arbitration provision in Paragraph 15 is separately located from the warranty

13

provision in Paragraph 14. Moreover, the intent of the parties to construe the provisions separately is evidenced by the "Initials" sections for the buyer, co-buyer, and seller under each paragraph. [*See* Doc. 12-2 at 8–9 ¶¶ 14–15]; *compare Smith v. D.R. Horton*, 790 S.E.2d 1, 4 (S.C. 2016) ("[W]e construe the entirety of paragraph 14, entitled 'Warranties and Dispute Resolution,' as the arbitration agreement. As the title indicates, all the subparagraphs of paragraph 14 must be read as a whole to understand the scope of the warranties and how different disputes are to be handled."), *with Damico*, 879 S.E.2d at 754 ("Within Section 16, there is nothing that refers to the limited warranty booklet or incorporates it by reference. Rather, Section 16 is a standalone arbitration provision . . . ."); *and Mart v. Great S. Homes, Inc.,* 893 S.E.2d 360, 367–68 (S.C. Ct. App. 2023) ("[T]he arbitration provision in the . . . [s]ales [c]ontract—standing alone— contains no . . . oppressive or unconscionable term[s]. Challenged terms may be found elsewhere in the [s]ales [c]ontract and/or the [w]arranty agreement, but controlling case law does not permit us to consider the language of the separate limited [w]arranty or the propriety of the waiver of implied warranties in analyzing the standalone arbitration language of the [s]ales [c]ontract."); *and Payne v. Amazon.com, Inc.*, No. 2:17-cv-2313-PMD, 2018 WL 4489275, at *3 (D.S.C. July 25, 2018) ("[U]nlike the agreement in *Smith*, Amazon's limitation of liability is in a separate paragraph with a separate heading from the paragraph that requires arbitration of all disputes. These paragraphs are adjacent, but they do not contain any cross-references such that the [c]ourt must read them together, as a whole, to understand how the Conditions of Use govern disputes. Plaintiffs essentially argue that one provision (the liability limitation) renders a different provision (the arbitration agreement) unconscionable. This runs afoul of the principle the South

Carolina Supreme Court reiterated in *Smith*: a party challenging an arbitration agreement must allege that the *arbitration agreement* is unconscionable, not that the *entire contract* is unconscionable." (internal quotation marks omitted)); *and Vriens v. D.R. Horton, Inc.,* No. 2:23-cv-06797-DCN, ECF No. 1000, at 18 (D.S.C. Sept. 4, 2025) (finding the arbitration provision severable from the warranty provision in an identical contract).[4]

Further, the arbitration provision (*i.e.*, Paragraph 15 alone) is not unconscionable. Even if the arbitration provision constitutes a contract of adhesion—a standard form contract with non-negotiable terms—"[a]dhesion contracts . . . are not per se unconscionable" under South Carolina law. *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 669 (S.C. 2007). Rather, an unconscionable contract requires both the absence of meaningful choice as to the terms and "terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Id.* at 668. The overarching focus of the unconscionability inquiry is "whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *Id.*

Plaintiffs exercised a meaningful choice to contract with Defendant. Indeed, Plaintiffs were free to purchase a home from another builder, purchase a pre-existing home, or purchase no home at all. Further, the arbitration provision does not appear one-sided or oppressive, as it binds both Plaintiffs and Defendant to arbitration of all disputes relating to the Homeowner Agreement and the property. Finally, the arbitration provision contains reasonable terms: it provides for arbitration in Plaintiffs' home county,

---

[4] Plaintiffs correctly observe that Paragraph 15 contains references to Paragraph 14. However, those references pertain to the scope of arbitrable disputes; they do not incorporate the substance of the warranty provision itself.

establishes an expedited hearing schedule, and provides the arbitrator with discretion to assess fees and costs against Defendant. [*See* Doc. 12-2 at 9 ¶ 15.]  Given the foregoing considerations, the Court finds that Plaintiffs and Defendant engaged in a fair bargaining process and agreed to reasonable terms, rendering the arbitration provision enforceable.

**Whether the Arbitration Provision Was Merged Out of Existence by the Deed**

Plaintiffs further argue that this Court may not enforce the arbitration provision because the deed to the Home merged the Homeowner Agreement out of existence. [Doc. 18 at 8–11.]  To this end, Plaintiffs contend that the arbitration provision contains no language explicitly providing that its terms would survive closing.  [*Id.* at 9.]  But the Court concludes that the merger doctrine does not apply in the present circumstances.

Under the merger by deed doctrine, "'[t]he execution, delivery, and acceptance of a deed varying from the terms of the antecedent contract indicates an amendment of the original contract, and generally the rights of the parties are fixed by their expressions as contained in the deed.'"  *Shoney's, Inc. v. Cooke*, 353 S.E.2d 300, 311 (S.C. Ct. App. 1987) (quoting *Charleston & W. Carolina Ry. Co. v. Joyce*, 99 S.E.2d 187, 193 (S.C. 1957)).  However, agreements that are not intended to be merged in a deed are not merged into the deed.  *Hughes v. Greenville Country Club*, 322 S.E.2d 827, 828 (S.C. Ct. App. 1984).  The party denying merger bears the burden of proving by clear and convincing evidence that merger was not intended.  *Id.*

As an initial matter, courts in other jurisdictions have refused to apply the merger doctrine to an arbitration provision in a home construction contract because such an agreement is collateral to the transfer of property.  *See, e.g., Bushman Inv. Props. v. DBSI E-470 E. LLC*, No. 09-cv-00674-MSK-KLM, 2010 WL 582351, at *5 (D. Colo. Feb. 16,

16

2010) ("Here, the arbitration agreement is not a covenant relating to the title, quantity, possession, or emblements of the property itself; it is, quite obviously, not an agreement that can be satisfied by execution and delivery of the deed. Thus, at least under Colorado law, it did not merge into the terms of the deed, but rather remains enforceable."); *Drees Co. v. Osburg*, 144 S.W.3d 831, 833 (Ky. Ct. App. 2003) ("The arbitration agreement in this case was collateral to the property transfer. It had nothing to do with the title, possession, quantity, or emblements of the property. And it is reasonable to suppose that the parties intended post-closing performance of that clause; disputes, after all, frequently arise after closing. The trial court erred, therefore, when it applied the merger doctrine to the arbitration agreement."); *Lakeway Homes, Inc. v. White*, No. 05-15-01455-CV, 2016 WL 3453559, at *5 (Tex. Ct. App. June 23, 2016) ("[A] contract for the sale of land that creates rights collateral to and independent of the conveyance survives a deed that is silent in respect to the collateral or independent agreement. Texas courts have held that an arbitration provision creates this kind of right independent of the sale of property; thus, an arbitration provision is not 'merged out of existence' by subsequent deeds or other closing documents." (citation omitted)); *Thomas v. Sloan Homes, LLC*, 81 So. 3d 309, 314 (Ala. 2011) ("The merger doctrine does not in this case extinguish the arbitration clause any more than it extinguishes other 'collateral agreements' found in the sales contract."). To this end, the undersigned locates no caselaw in South Carolina applying the merger by deed doctrine to an arbitration provision in a home construction contract.

Further, even if the merger by deed doctrine broadly applied to an arbitration provision in a home construction contract under South Carolina law, clear and convincing evidence indicates that the parties did not intend merger here. *See Hughes*, 322 S.E.2d

17

at 828 (detailing the contrary intent exception to the merger doctrine). Although the Homeowner Agreement's arbitration provision lacks an explicit statement addressing merger, it specifically references "any and all disputes which *may arise*" in the future. [Doc. 12-2 at 9 ¶ 15 (emphasis added).] Moreover, the Homeowner Agreement—considered as whole—contains multiple provisions evidencing the parties' intent not to merge its terms with the deed, such as the ten-year limited warranty [*id.* at 8–9 ¶ 14] and the post-closing remedies provision [*id.* at 10 ¶ 18]. Accordingly, the merger doctrine does not preclude enforcement of the arbitration provision. *See Vriens v. D.R. Horton, Inc.,* No. 2:23-cv-06797-DCN, ECF No. 1000, at 18–20 (D.S.C. Sept. 4, 2025) (refusing to apply the merger by deed doctrine to an arbitration provision in an identical homeowner agreement because the contrary intent exception applied).

## CONCLUSION

For the foregoing reasons, Defendant's motion to stay and compel arbitration under the Homeowner Agreement and the Subcontractor ICA [Doc. 12] is GRANTED. This action is accordingly STAYED pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

IT IS SO ORDERED.

s/ Jacquelyn D. Austin<br>United States District Judge

February 10, 2026
Greenville, South Carolina