IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Bob Wood and Gail Wood, | ) | Case No. 8:25-cv-03367-JDA |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| D.R. Horton, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| D.R. Horton, Inc., | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Knight Construction and | ) | |
| Landscaping, LLC; Theron H. Knight, | ) | |
| III, *d/b/a* Knight Construction and | ) | |
| Landscaping LLC, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

This matter is before the Court on Plaintiffs' motion for reconsideration of the Court's Order granting Defendant's motion to stay and compel arbitration. [Doc. 42; *see also* Docs. 12; 39.] The motion is fully briefed [*see* Doc. 43] and ready for review. For the reasons stated herein, the Court denies the motion.

**BACKGROUND**

On April 29, 2025, Defendant filed a motion to stay the case and compel arbitration. [Doc. 12.] The Court granted the motion, determining that (1) the parties' contract (the "Homeowner Agreement") required arbitration under the Federal Arbitration Act ("FAA"); (2) the arbitration provision was not unconscionable; and (3) the arbitration provision did

not merge out of existence once the deed to Plaintiffs' home (the "Home") was executed. [Doc. 39 at 10–18.]

On March 19, 2026, Plaintiffs filed a motion for reconsideration of the Court's Order granting Defendant's motion to stay and compel arbitration.  [Doc. 42; *see also* Docs. 12; 39.]   Plaintiffs contend that the transaction in question does not implicate interstate commerce within the meaning of the FAA because the parties contracted for the sale of a pre-existing home, not the construction and sale of a new home.  [Doc. 42 at 5–8.]  To this end, Plaintiffs cite to language in the Homeowner Agreement stating that "[Defendant] has completed construction of a . . . single-family detached . . . residence . . . and a Certificate of Occupancy has been issued for the [Home]."  [*Id.* at 6 (citing Doc. 12-2 at 21).]   Further, Plaintiffs contend that the Homeowner Agreement "memorializes the parties' agreement to by bound by the South Carolina Uniform Arbitration Act ('SCUAA')" [*id.* at 8–10], and the SCUAA explicitly excludes personal-injury claims from arbitration [*id.* at 10–11].

Defendant filed a response on April 2, 2026.  [Doc. 43.]  As an initial matter, Defendant claims that the arguments advanced by Plaintiffs in support of their motion for reconsideration were not previously presented to the Court and should not be considered at this late stage.  [*Id.* at 6–9.]  Further, Defendant argues that the Homeowner Agreement implicates interstate commerce within the meaning of the FAA because the parties contracted for the construction and sale of a new home, evidenced by certain provisions in the Homeowner Agreement and construction-related work completed after the execution date.  [*Id.* at 12–13.]  Finally, while Defendant "concedes that 'personal injury' claims are excepted under the [SCUAA]," it contends that "further analysis on the

applicability of SCUAA is unwarranted" because "[t]he transactions at issue . . . involve interstate commerce and fall squarely within the purview of the FAA."  [*Id.* at 16–17.]

## APPLICABLE LAW

Rule 54(b) of the Federal Rules of Civil Procedure governs the Court's reconsideration of interlocutory orders.  Fed. R. Civ. P. 54(b).  Where a district court issues an interlocutory order "that adjudicates fewer than all the claims," the Court retains discretion to revise such an order "at any time before the entry of a judgment adjudicating all the claims."  *Id.*

If "the 'issue of arbitrability originated as part of an action raising other claims for relief[,]' it is considered to be an 'embedded proceeding'" and is not an appealable final order.  *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 398 (4th Cir. 1995) (quoting *Am. Cas. Co. v. L–J. Inc.*, 35 F.3d 133, 136 (4th Cir. 1994)).  In this case, the issue of arbitrability of the parties' dispute arose from personal-injury and loss-of-consortium claims asserted by Plaintiffs. [*See* Doc. 1-3.]  Because the issue of arbitrability was not the sole issue before the Court, the Court's Order compelling arbitration was interlocutory in nature.

The power to grant relief under Rule 54(b) "is committed to the discretion of the district court." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). "Compared to motions to reconsider *final* judgments pursuant to Rule 59(e) . . ., Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).  The discretion Rule 54(b) provides, however, is not limitless. *Id.*  "[C]ourts have cabined revision pursuant to Rule

3

54(b) by treating interlocutory rulings as law of the case." *Id*. "The law-of-the case doctrine provides that in the interest of finality, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id*. (internal quotation marks omitted). "Thus, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice."[1] *Id.* (cleaned up). This standard "closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." *Id*. (internal quotation marks omitted).

## DISCUSSION

Here, Plaintiffs have not identified a change in controlling law or new evidence not previously available. Instead, Plaintiffs argue that the Court's Order granting Defendant's motion to compel arbitration was clearly erroneous because the Homeowner Agreement does not require arbitration under the FAA or the SCUAA. [Doc. 42 at 5–8.] The Court disagrees.

As an initial matter, Plaintiffs may not raise novel arguments in a motion for reconsideration. *See South Carolina v. United States,* 232 F. Supp. 3d 785, 793 (D.S.C. 2017) (determining that a motion to reconsider an interlocutory order should not "be used

---

[1] "A prior decision does not qualify for this third exception by being 'just maybe or probably wrong; it must . . . strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, Nos. 92–2355 & 92–2437, 1995 WL 520978, at *5 n.6 (4th Cir. Sept. 5, 1995)).

to raise new arguments or evidence that could have been raised previously"); *White v. City of Greensboro*, 586 F. Supp. 3d 466, 481 (M.D.N.C. 2022) ("Such a motion allows a district court to correct its own errors, but it does not serve as a vehicle for a party to raise new arguments or legal theories that could have been raised before the judgment."). Here, Plaintiffs failed to raise the arguments presently at issue in their initial response to Defendant's motion. [*See generally* Doc. 18.] Nevertheless, even if Plaintiffs' arguments were appropriately raised, the Court would deny the motion.

**Whether the Transaction Involves Interstate Commerce**

A party seeking to compel arbitration under the FAA must establish, among other factors, that the transaction involves interstate or foreign commerce. [*See* Doc. 39 at 8 (citing *Am. Gen. Life & Accident Ins. v. Wood,* 429 F.3d 83, 87 (4th Cir. 2005)).] In South Carolina, transactions for the construction of new homes "manifestly involve interstate commerce." *Damico v. Lennar Carolinas, LLC*, 879 S.E.2d 746, 753 (S.C. 2022). As stated previously, Plaintiffs contend that the parties' transaction involves only *intra*state—not *inter*state—commerce because Plaintiffs purchased the Home after construction was completed and a certificate of occupancy was issued. [Doc. 42 at 5–8.] The Court disagrees.

First, Plaintiffs retained the ability to make selections regarding the construction of the Home after they executed the Homeowner Agreement. For example, an addendum to the Homeowner Agreement, entitled "COMPLETED CONSTRUCTION," contains a provision allowing Plaintiffs to request changes to the existing options and features of the Home after the execution date. [Doc. 12-2 at 21; *see also id.* at 14 ("Seller will include in the [Home] the following options and upgrades *selected by Purchaser*. . . ." (emphasis

added)), 18–19 (noting that the "washer/dryer," "blinds," and "refrigerator" options remained available after the "Quality Control Walk Performed" stage of construction).]

Moreover, construction efforts supplied by Defendant continued after the execution date, as evidenced by a land survey conducted by a foreign company [Doc. 43-2 at 4–6; *see also* Doc. 12-2 at 6 ("At Closing, Seller shall provide Purchaser with a plat of survey of the Lot performed by an independent, licensed surveyor, showing all structures and other improvements located on the Property as of the date of the survey. . . .")]; a termite treatment conducted by a foreign company [Doc. 43-2 at 2–3; *see also* Doc. 12-2 at 8 ("At the time of Closing, Seller shall provide Purchaser with a letter or a soil treatment report from a pest control company licensed in South Carolina certifying that the Lot has been treated within one (1) year of the date of Closing for subterranean termite infestation.")]; Plaintiffs' orientation inspection of the Home [Doc. 43-2 at 7–8; *see also* Doc. 12-2 at 8 ("Prior to Closing, Seller and Purchaser will meet at the Property to conduct a walkthrough inspection and orientation. . . .  Purchaser and Seller shall prepare and sign a written list of items on the Property that the parties agree should be corrected, repaired, or replaced. . . .  Seller shall thereafter correct, repair or replace the items listed . . . .")]; and Defendant's lot cost detail report [Doc. 43-2 at 9–13 (see post-execution dates highlighted)].  *See also Vriens v. D.R. Horton, Inc.,* No. 2:23-cv-06797-DCN, ECF No. 1124, at 47–50 (D.S.C. Feb. 9, 2026) (finding that an agreement involved interstate commerce on similar facts).

Further, the Court does not agree with Plaintiffs that the facts of this case parallel those in *Bradley v. Brentwood Homes*, *Inc.*, 730 S.E.2d 312, 317–18 (S.C. 2012).  [*See* Doc. 42 at 5–8.]  In *Bradley*, the purchase agreement at issue contained provisions

6

entitled "New Construction," "House Plan," "Options," and "Color Selection," but they were marked "N/A" and were not signed by the plaintiff. *Id.* at 318. In addition, the agreement specifically provided that the plaintiff was buying a "completed dwelling and that Seller [was] not acting as a contractor for Purchaser in the construction of a dwelling." *Id.* at 313 n.3. By contrast, the Homeowner Agreement in the present case allowed Plaintiffs to request changes to the existing options and features in the Home. [Doc. 12-2 at 21; *see also id.* at 18–19.]

Based on the foregoing, the Court concludes that the transaction involves interstate commerce, bringing the Homeowner Agreement within the purview of the FAA. *See Episcopal Hous. Corp. v. Fed. Ins.,* 239 S.E.2d 647, 652 (S.C. 1977) ("It would be virtually impossible to construct [a] building . . . with materials, equipment and supplies all produced and manufactured solely within the State of South Carolina.").

**Whether the Homeowner Agreement Mandates Application of the SCUAA**

Plaintiffs also contend that "the plain language of the parties' agreement confirms application of South Carolina, not federal[,] law . . . ." [Doc. 42 at 10.] To this end, Plaintiffs refer to the following notice appearing on the first page of the Homeowner Agreement:

> **NOTE: THIS CONTRACT PROVIDES FOR MANDATORY BINDING ARBITRATION PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION ACT, SECTIONS 14-48-10[2] ET. SEQ., SOUTH CAROLINA CODE OF LAWS (1976, AS AMENDED).**

[*Id.* at 8 (citing Doc. 12-2 at 5) (footnote added).] Plaintiffs appear to argue that this notice

---

[2] The Homeowner Agreement's reference to Section 14-48-10 of the South Carolina Code of Laws appears to be an error. The SCUAA is codified at § *15*-48-10, *et seq.*

mandates application of the SCUAA to the exclusion of the FAA.  The Court finds that the FAA governs.

In general, courts are to respect the parties' choice of state arbitration law, even where the agreement is subject to the FAA.  *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468 (1989).  However, if the arbitration provision in question cannot be enforced under a state law that is applicable *only* to arbitration provisions, the FAA preempts that state law.  *See Soil Remediation Co. v. Nu-Way Env't., Inc.*, 476 S.E.2d 149, 151–52 (S.C. 1996).

Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract."  9 U.S.C. § 2 (emphasis added).  As such, "generally applicable contract defenses . . . may be applied to invalidate arbitration agreements without contravening § 2," but "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions."  *Dr.'s Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996); *see id.* ("Congress precluded States from singling out arbitration provisions for suspect status . . . .").  Relatedly, "the FAA pre-empts state laws which require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."  *Volt Info. Sci., Inc.,* 489 U.S. at 478 (internal quotation marks omitted)).

In the present suit, Plaintiffs lodge personal-injury and loss-of-consortium claims against Defendant.  [*See* Doc. 1-3.]  The parties agree that South Carolina Code Section 15-48-10—a state law applicable *only* to arbitration provisions—exempts from arbitration "[a]ny claim arising out of personal injury, based on contract or tort[.]"  S.C. Code Ann.

8

§ 15-48-10(b)(4); [*see* Docs. 42 at 2–3, 10–11; 43 at 16]. Thus, the arbitration provision cannot be enforced under the SCUAA.

As a court in this district has observed, "the SCUAA singles out arbitration agreements by invalidating the parties' agreement to arbitrate their claims arising out of personal injury." *Osborne v. Marina Inn at Grande Dunes, LLC,* No. 4:08-cv-0490, 2009 WL 3152044, at \*4 (D.S.C. Sept. 23, 2009). Where, as here, the parties' personal-injury dispute falls within the scope of the arbitration provision and the transaction manifestly involves interstate commerce [*see* Doc. 39 at 10–12], the FAA preempts state law, and "[t]he fact that the [agreement] indicates that it is governed by the SCUAA is inapposite." *Osborne,* 2009 WL 3152044, at \*4; *see also Soil Remediation Co.*, 476 S.E.2d at 152–53 (holding that the FAA preempted the SCUAA's notice provision, where the parties' agreement related to interstate commerce and the party seeking to compel arbitration failed to properly comply with the SCUAA notice provision).

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for reconsideration of this Court's Order staying the case and compelling arbitration under the FAA [Doc. 42] is DENIED.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

May 20, 2026
Greenville, South Carolina

9